IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN BULLOCK, | : | Civil Action No. 3:18-cv-2091 |
| Petitioner | : | (Judge Munley) |
| v. | : | |
| WARDEN VINCENT MOONEY, PA STATE ATTORNEY GENERAL, | : | |
| Respondents | : | |

**MEMORANDUM**

Stephen Bullock ("Bullock"), a Pennsylvania state inmate, initiated the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, on October 29, 2018, seeking relief from his 2006 Criminal Homicide, Tampering with Physical Evidence, Abuse of a Corpse, and Possession of Marijuana convictions. He acknowledges that his petition has not been filed within the Antiterrorism and Effective Death Penalty statute of limitations ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). See 28 U.S.C. § 2244(d) (1); (Doc. 1, p. 14). He argues that he is entitled to equitable tolling of the statute or, alternatively, the he is entitled to relief under the fundamental miscarriage of justice exception. Id.

On November 29, 2018, an Order (Doc. 3) issued directing Respondents to submit a memorandum concerning the timeliness of the petition. Respondents filed a

timely Response on December 5, 2018. (Doc. 4). For the reasons set forth below, the petition will be dismissed as untimely.

I. **Background**

Following a jury trial, on March 9, 2006, Bullock was convicted in Court of Common Pleas of Dauphin County Criminal Case CP-22-CR-2216-2005, of Criminal Homicide, Tampering with Physical Evidence, Abuse of a Corpse, and Possession of Marijuana and sentenced to life imprisonment. (Doc. 4, pp. 15, 16, 19). He filed a timely direct appeal. (Id.). On December 28, 2006, the Superior Court of Pennsylvania affirmed his conviction. (Id. at 34). The Supreme Court of Pennsylvania denied his petition for allowance of appeal on July 12, 2007. (Id. at 39).

On November 21, 2007, Bullock filed a petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46, which the PCRA court denied without a hearing on July 15, 2008. (Doc. 4, pp. 20, 21). On April 6, 2009, the Superior Court vacated the order of dismissal and remanded the matter for appointment of counsel and the filing of an amended petition. (Id. at 43).

On remand, the PCRA Court appointed counsel. (Id. at 23). Counsel filed an amended petition and, simultaneously moved to withdraw from the case. (Id. at 24). The PCRA court granted the motion to withdraw and, on January 8, 2010, gave notice of its intent to dismiss the petition. (Id.) The PCRA Court dismissed the petition on March 30, 2010. (Id. at 25).

Bullock timely appealed to the Superior Court. (Id.) On March 16, 2011, the Superior Court affirmed the denial of PCRA relief and on October 26, 2011, the Supreme Court denied his petition for allowance of appeal. (Id. at 25, 26).

On April 25, 2013, Bullock filed a second PCRA petition which was dismissed on August 12, 2013. (Id. at 26). The appellate courts affirmed the dismissal. (Id. at 27).

On April 14, 2014, he filed a third PCRA petition. (Id. at 27). On May 13, 2014, the PCRA Court gave notice of its intent to dismiss the petition. (Id. at 28). The Court dismissed the petition on June 5, 2014. (Id.) Bullock did not pursue an appeal. (Id.)

As noted *supra*, Bullock commenced the instant action on October 29, 2018.

## II.  Discussion

The court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition filed under § 2254 must be timely filed under the stringent standards set forth in the AEDPA. See 28 U.S.C. § 2244(d)(1). Specifically, a state prisoner requesting habeas corpus relief pursuant to § 2254 must adhere to a statute of limitations that provides, in relevant part, as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> . . .

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2); see Jones v. Morton, 195 F.3d 153, 157 (3d Cir. 1999). Thus, under the plain terms of § 2244(d)(1)(A), a state court criminal judgment does not become final until appeals have been exhausted or the time for appeal has expired. See Nara v. Frank, 264 F.3d 310, 314 (3d Cir. 2001).

Bullock was sentenced on March 9, 2006. He pursued a direct appeal and his judgment of sentence became final on October 10, 2007, ninety days after the Supreme Court of Pennsylvania denied his petition for allowance of appeal. The one-year period for the statute of limitations commenced running as of that date. Hence, the federal petition, which was filed on October 29, 2018, is patently untimely.

The Court's analysis does not end here. The impact of both statutory and equitable tolling, as well as the fundamental miscarriage of justice exception, must be considered.

1. Statutory Tolling

Section 2244(d)(2) tolls the one-year statute of limitations with respect to the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations began running on October 10, 2007. Bullock's first PCRA petition, filed forty-two days after the statute began running, tolled the

4

statute of limitations. The statute remained tolled until October 26, 2011, the date on which the Pennsylvania Supreme Court affirmed the denial of PCRA relief. At that time, the statute began running again and expired 323 days later, on September 13, 2012. Although the first PCRA statutorily tolled the limitations period for a time, the instant petition, filed on October 29, 2018, is clearly untimely.

Bullocks second PCRA petition, filed on April 25, 2013, and his third PCRA, filed on April 14, 2014, failed to toll the statute because the limitations period had already expired. A PCRA petition does not toll an expired statute of limitations. See Long v. Wilson, 393 F.3d 390, 395 (3d Cir. 2004) (finding that petitioner's untimely PCRA petition did not statutorily toll the statute of limitations because, *inter alia*, "the limitations period had already run when it was filed"). Even if these petitions had operated to toll the statute, his petition would still be untimely. The third petition was dismissed on April 16, 2014. Bullock did not file his federal petition until October 29, 2018, more than four years later.

2. Equitable Tolling

"Equitable tolling of the limitations period is to be used sparingly and only in "extraordinary" and "rare" circumstances. See Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir. 2006); LaCava v. Kyler, 398 F.3d 271, 274-75 (3d Cir. 2005). It is only in situations "when the principle of equity would make the rigid application of a limitation period unfair" that the doctrine of equitable tolling is to be applied. See Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003). Generally, a litigant seeking equitable tolling

must establish the following two elements: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 418.

With respect to the diligent pursuit of rights, petitioner must demonstrate that he or she exercised reasonable diligence in investigating and bringing the claims. See Robinson v. Johnson, 313 F.3d 128, 142 (3d Cir. 2002). Mere excusable neglect is not sufficient. See LaCava, 398 F.3d at 276. Moreover, "the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)).

Extraordinary circumstances have been found where (1) the respondent has actively misled the petitioner, (2) the petitioner has in some extraordinary way been prevented from asserting his rights, (3) the petitioner has timely asserted his rights mistakenly in the wrong forum, see Jones, 195 F.3d at 159, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim. See Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005).

Bullock seeks equitable tolling of the statute based on the alleged abandonment of his PCRA attorney. (Doc. 1, p. 14). He indicates that the attorney, who filed a no merit letter, failed to conduct independent legal analysis or research of the record. (Id.) Even if this were found to be true, the passage of 547 days between the Pennsylvania Supreme Court's October 26, 2011 denial of Bullock's Petition for Allowance of Appeal of the

denial of his first PCRA petition, and the filing of his second PCRA petition on April 25, 2013, demonstrates that Bullock failed to diligently pursue his rights. Further, approximately 1657 days elapsed between the dismissal of his third PCRA and his pursuit of federal relief. Equitable tolling on this basis in not available to Bullock.

3. <u>Fundamental Miscarriage of Justice</u>

Bullock alternatively seeks relief pursuant to the fundamental miscarriage of justice exception. This exception "is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." <u>Herrera v. Collins</u>, 506 U.S. 390, 404 (1993). It "seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995). The Supreme Court has applied it "to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].' " <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 395 (2013) (alteration in original) (quoting <u>Schlup</u>, 513 U.S. at 329). "Put differently, the exception is only available when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" <u>Coleman v. Greene</u>, 845 F.3d 73, 76 (3d Cir. 2017), citing <u>McQuiggan</u> at 401, (quoting Schlup, 513 U.S. at 316). In <u>Schlup</u>, the Supreme Court emphasized that "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred

claim." 513 U.S. at 316. While a petitioner alleging actual innocence need not prove diligence in order to assert a claim of actual innocence, "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." Id. at 1935; see also Schlup, 513 U.S. at 332 ("A court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of ... evidence [of actual innocence.]").

An actual innocence claim must be based on "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 5 13 U.S. at 324. Evidence is "new" under the Schlup standard only if it was not available at the time of trial and could not have been discovered earlier through the exercise of due diligence, except in situations where the evidence was not discovered due to the ineffectiveness of counsel. See Houck v. Stickman, 625 F.3d 88, 93-94 (3d Cir. 2010).

The exception, though narrow, may overcome procedural default rules such as the timing requirements of 28 U.S.C. § 2244(d)(1). See McQuiggin, 569 U.S. at 392 (2013) (citing cases). Bullock seeks to invoke the fundamental miscarriage of justice to overcome the untimeliness of his petition, arguing that "[a] retained independent pathologist, psychiatric/psychological expert, and investigation of third parties who could explain the defendant [sic] behavior would show that he is innocent of first degree murder and was instead guilty of voluntary manslaughter." (Doc. 1, p. 14). However, this argument is unsupported by the reliable evidence. Consequently, his actual innocence claim fails.

## III. Conclusion

Based on the foregoing, the petition will be dismissed as untimely.

## IV. Certificate of appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, no COA will issue.

An appropriate Order will issue.

                             **BY THE COURT:**

                             <u>**s/James M. Munley**</u>
                             **JUDGE JAMES M. MUNLEY**
                             **United States District Court**

**Dated:** January 23, 2019